1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  WILL LOOMIS,                    )  CV 12-5525 RSWL (JEMx)
                                    )
13                                  )  **ORDER Re: DEFENDANTS'**
                    Plaintiff,      )  **MOTION FOR SUMMARY**
14                                  )  **JUDGMENT** [30]
        v.                          )
15                                  )
                                    )
16  JESSICA CORNISH P/K/A           )
    JESSIE J; UMG RECORDINGS,       )
17  INC.; and UNIVERSAL             )
    REPUBLIC RECORDINGS,            )
18                                  )
                                    )
19                  Defendants.     )
                                    )
20                                  )
                                    )
21                                  )
                                    )
22  _____)

23      Before the Court is Defendants Jessica Cornish

24  p/k/a Jessie J ("Cornish"), UMG Recordings, Inc.

25  ("UMG"), and Universal Republic Records' ("URR"),

26  Motion for Summary Judgment [30].  Defendants' Motion

27  was set for hearing on November 5, 2013 [30].  Having

28  reviewed all the papers and arguments submitted

pertaining to this Motion, **THE COURT NOW RULES AS FOLLOWS:**

The Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

## I.   BACKGROUND

Plaintiff is a self-employed musician who has, since 2007, been in a rock band called "Loomis & The Lust." Defendants' Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendants' Motion for Summary Judgment ("SUF") ¶¶ 1-2.  In June or July of 2008, Plaintiff wrote a composition entitled "Bright Red Chords" ("BRC").  SUF ¶ 3.  Plaintiff obtained a copyright registration for BRC by depositing a CD containing a recording of that composition (the "Deposit Copy Recording"), as well as several other recordings, with the United States Copyright Office. Id. at ¶ 4.  The U.S. Copyright Office gave the CD containing the Deposit Copy Recording the registration number PAU003479101, which is the only registered copyright alleged to have been infringed in the Complaint.  Id. at ¶¶ 5-6.  The Deposit Copy Recording, recorded on August 4, 2008, was never commercially released or exploited.  Id. at ¶¶ 7, 12.  Plaintiff released CDs entitled "Nagasha" and "Space Camp," which contained a recording of BRC.  Id. at ¶ 8.  "Nagasha" was released in or about July 2009 and "Space Camp" in or about 2010.  Id. at ¶¶ 9-10.  Plaintiff does not know how many copies of "Nagasha" or "Space Camp" have

1 been sold.  _Id._ at ¶¶ 24-25.

2      Defendant Cornish is a recording artist who is

3 signed to Defendant URR.  Compl. ¶¶ 14, 17.  Defendant

4 URR is owned by Defendant UMG.  _Id._ at ¶ 18.  In June

5 2011, Defendant Cornish, Lukasz Gottwald p/k/a "Dr.

6 Luke," Claude Kelly, Karl Martin Sandberg p/k/a "Max

7 Martin," and Henry Walter p/k/a "Cirkut" (collectively,

8 the "Domino Writers") wrote a composition entitled

9 "Domino".  SUF ¶ 14.  In or about June 2011, Gottwald

10 and Walter created an instrumental musical track which

11 became the instrumental musical bed for Domino.  _Id._ at

12 ¶¶ 16-17.  In June 2011, the melody and lyrics were

13 written and recorded at Conway Studios.  _Id._ at ¶ 18.

14 Kelly and Cornish created the melody and lyrics for the

15 verses and choruses of Domino, in collaboration with

16 Gottwald over the instrumental musical bed.  _Id._ at ¶

17 19.  Walter was present during this session.  _Id._ at ¶

18 20.  Gottwald and Sandberg provided additional creative

19 contributions during the session.  _Id._ at ¶ 21.  At

20 this session, Cornish recorded her vocal performance of

21 the melody and lyrics that had been created at the

22 session.  _Id._ at ¶ 22.  After that session at Conway

23 Studios, Gottwald worked with Walter and Sandberg to

24 fine-tune and polish Domino.  _Id._ at ¶ 23.  Domino was

25 released by Defendant URR.  _Id._ at ¶ 13.

26      Plaintiff has never met or spoken to any of the

27 Domino Writers.  _Id._ at ¶ 43.  Plaintiff has never

28 instructed anyone to send any music to any of the

1  Domino Writers.  <u>Id.</u> at ¶ 45.

2       Plaintiff alleges that in August 2011, Defendants

3  infringed upon his copyright by producing and

4  distributing Domino.  Compl. ¶ 19.  Plaintiff alleges

5  that Domino contains substantially similar elements to

6  BRC.  <u>Id.</u>

7       Plaintiff filed the Complaint on June 25, 2012 [1].

8  Defendants answered on August 20, 2012 [9, 11].  On

9  September 19, 2013, Defendants filed the instant Motion

10  for Summary Judgment [30].

11                  **II.  <u>LEGAL STANDARD</u>**

12  **A.  <u>Summary Judgment</u>**

13       Summary judgment is appropriate when there is no

14  genuine issue of material fact and the moving party is

15  entitled to judgment as a matter of law.  Fed. R. Civ.

16  P. 56(c).  A fact is "material" for purposes of summary

17  judgment if it might affect the outcome of the suit,

18  and a "genuine issue" exists if the evidence is such

19  that a reasonable fact-finder could return a verdict

20  for the non-moving party.  <u>Anderson v. Liberty Lobby,</u>

21  <u>Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any

22  inferences based on underlying facts, must be viewed in

23  the light most favorable to the opposing party.

24  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d

25  1327, 1329 (9th Cir. 1983).

26       Where the moving party does not have the burden of

27  proof at trial on a dispositive issue, the moving party

28  may meet its burden for summary judgment by showing an

                                4

"absence of evidence" to support the non-moving party's case. <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(c) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 324. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." <u>Anderson</u>, 477 U.S. at 255. Where a motion for summary judgment is grounded on the assertion that the non-moving party has no evidence, the non-moving party may defeat the motion by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." <u>Celotex</u>, 477 U.S. at 332.

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>See</u> <u>Falls Riverway Realty, Inc. v. Niagara Falls</u>, 754 F.2d 49 (2d Cir. 1985); <u>Thornhill Pub. Co., Inc. v. GTE Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify

1  going to trial.  Notmeyer v. Stryker Corp., 502 F.

2  Supp. 2d 1051, 1054 (N.D. Cal. 2007).

3      In ruling on a motion for summary judgment, the

4  Court's function is not to weigh the evidence, but only

5  to determine if a genuine issue of material fact

6  exists.  Anderson, 477 U.S. at 255.

7  **B.  Copyright Infringement**

8      To establish copyright infringement, two elements

9  must be proven: 1) ownership of a valid copyright; and

10 2) copying of protected elements of the plaintiff's

11 work.  See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,

12 499 U.S. 340, 361 (1991); Benay v. Warner Bros. Entm't,

13 Inc., 607 F.3d 620, 624 (9th Cir. 2010).

14     "Absent evidence of direct copying, proof of

15 infringement involves fact-based showings that the

16 defendant had access to the plaintiff's work and that

17 the two works are substantially similar."  Funky Films,

18 Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1076

19 (9th Cir. 2006).

20     A plaintiff satisfies the access element by showing

21 that a defendant had "an opportunity to view or to copy

22 plaintiff's work."  Three Boys Music Corp. v. Bolton,

23 212 F.3d 477, 482 (9th Cir. 2000) (citing Sid and Marty

24 Krofft Television Prods., Inc. v. McDonald's Corp., 562

25 F.2d 1157, 1172 (9th Cir. 1977)).  Where a high degree

26 of access is shown, a lower standard of proof of

27 substantial similarity may be required.  Swirsky v.

28 Carey, 376 F.3d 841, 844 (9th Cir. 2004).  This is

known as the "inverse ratio rule." <u>Benay</u>, 607 F.3d at
625; <u>Rice v. Fox Broad. Co.</u>, 330 F.3d 1170, 1178 (9th
Cir. 2003); <u>Shaw v. Lindheim</u>, 919 F.2d 1353, 1356 (9th
Cir. 1990).  Generally speaking, "[w]here there is no
direct evidence of access, circumstantial evidence can
be used to prove access either by (1) establishing a
chain of events linking the plaintiff's work and the
defendant's access, or (2) showing that the plaintiff's
work has been widely disseminated." <u>Art Attacks Ink,</u>
<u>LLC v. MGA Entm't Inc.</u>, 581 F.3d 1138, 1143 (9th Cir.
2009); <u>see also</u> <u>Three Boys Music Corp.</u>, 212 F.3d at
482.

     "When the issue is whether two works are
substantially similar, summary judgment is appropriate
'if no reasonable juror could find substantial
similarity of ideas and expression, viewing the
evidence in the light most favorable to the nonmoving
party.'" <u>Smith v. Jackson</u>, 84 F.3d 1213, 1218 (9th
Cir. 1996) (quoting <u>Kouf v. Walt Disney Pictures &</u>
<u>Television</u>, 16 F.3d 1042, 1045 (9th Cir. 1994)).

     A two-part test is used to determine whether the
two works are substantially similar: an "intrinsic" and
"extrinsic" part. <u>Benay</u>, 607 F.3d at 624.  "The
extrinsic test considers whether two works share a
similarity of ideas and expression as measured by
external, objective criteria." <u>Swirsky</u>, 376 F.3d at
845 (quoting <u>Smith</u>, 84 F.3d at 1218).  In analyzing
whether the two works are substantially similar, the

court must distinguish between the protectable and unprotectable material because a party claiming infringement may place no reliance upon any similarity in expression resulting from unprotected elements.  See Funky Films, 462 F.3d at 1077; Swirsky, 376 F.3d at 845; Apple v. Microsoft, 35 F.3d 1435, 1442-43 (9th Cir. 1994).

"The 'intrinsic test' is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'" Benay, 607 F.3d at 624 (quoting Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002)).  "Once the extrinsic test is satisfied, the fact finder applies the intrinsic test." Three Boys Music Corp., 212 F.3d at 485.

Generally, "only the 'extrinsic' test is . . . employed at summary judgment, as the 'intrinsic' test should generally be reserved for the ultimate finder of fact." Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001); see also Benay, 607 F.3d at 624; Funky Films, 462 F.3d at 1077.  If a court concludes that "reasonable minds might differ as to whether there is substantial similarity between the protected expression of ideas in two literary works, and the record supports the district court's conclusion, there is a triable issue of fact that precludes summary judgment." Shaw, 919 F.2d at 1361.

### III.   ANALYSIS

Plaintiff's sole claim is for copyright infringement of his copyright in BRC.  Compl. ¶¶ 23-37. This is the sole claim at issue in Defendants' instant Motion.  Mot. 1:2-6.

To establish copyright infringement, two elements must be proven: 1) ownership of a valid copyright; and 2) copying of protected elements of the plaintiff's work.  See Feist, 499 U.S. at 361; Benay, 607 F.3d at 624.  "A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (citing 17 U.S.C. § 410(c)).  See also Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

The parties do not dispute that Plaintiff owns a valid copyright in a CD containing a recording of BRC, registration number PAU 003479101.  SUF ¶¶ 4-6; Plaintiff's Statement of Disputed Material Facts ("SDMF") ¶¶ 4-6.  Accordingly, the Court finds that Plaintiff owns a valid copyright in BRC and the analysis turns to the second element of copyright infringement.

"Absent evidence of direct copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." Funky Films,

9

462 F.3d at 1076.

**A.   <u>Access</u>**

Plaintiff does not claim to have any evidence of direct copying.  <u>See</u> Opp'n 9:6.  As such, Plaintiff must first establish that Defendant Cornish or the other Domino Writers had access to BRC.  To prove access, Plaintiff must show that Defendant Cornish or the other Domino Writers had "an opportunity to view or to copy [Plaintiff's] work."  <u>Three Boys Music Corp.</u>, 212 F.3d at 482.  The burden is on Plaintiff to "show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work."  <u>Art Attacks Ink</u>, 581 F.3d at 1143 (citing <u>Three Boys Music Corp.</u>, 212 F.3d at 481). Moreover, "Plaintiff cannot create a triable issue of access merely by showing 'bare corporate receipt' of his work by an individual who shares a common employer with the alleged copier."  <u>Gable v. NBC</u>, 727 F. Supp. 2d 815, 826 (C.D. Cal. 2010) (citing <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 52-53 (2d Cir. 2003); <u>Meta-Film Assocs., Inc. v. MCA, Inc.</u>, 586 F. Supp. 1346, 1357-58 (C.D. Cal. 1984)).

If "there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated."  <u>Id.</u>  Of course, Plaintiff's evidence of

10

such access must be "substantial, affirmative and probative."  Jorgensen, 351 F.3d at 51 (citing Scott v. Paramount Pictures Corp., 449 F. Supp. 518, 520 (D.D.C. 1978)).

    1.  Chain of Events

    Plaintiff argues several chains of events to show that Defendant Cornish had access to BRC prior to creating Domino.  These theories of access may be divided into those involving purported UMG employees and those involving non-employees.

        a.  *UMG Employees*

    Plaintiff presents five UMG employees as "chain of events" conduits to prove access: Nate Albert, Sylvia Baker, Josh Feldman, Sunny Elle Lee, and Mark Czarra. SDMF ¶¶ 50, 59, 68, 79; Opp'n 7:19-22.  Plaintiff argues that because each of these UMG employees had a copy of BRC, the Domino Writers had sufficient access to BRC.  The crux of Plaintiff's argument is that because these five UMG employees were high ranking executives, they exerted such control over their roster of artists that the Domino Writers likely would have received BRC.  Opp'n 13:1-22.

    The critical question here is whether Plaintiff submitted BRC "*to an intermediary who is in a position to transmit [Plaintiff's] work to the creators of the infringing work.*"  Gable, 727 F. Supp. 2d at 826 (citing Meta-Film, 586 F. Supp. at 1355-56).  Such an intermediary "can be a person who (1) has supervisory

11

responsibility for the *allegedly infringing project*, (2) contributed ideas and materials to it, or (3) *worked in the same unit* as the creators." Id. (emphasis added). "At a minimum, however, 'the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access.'" Id. (quoting Meta-Film, 586 F. Supp. at 1358).

It appears to this Court that Plaintiff must fairly trace, through a chain of events, a link between the alleged intermediary and the Domino Writers, the creators of the allegedly infringing work.

For example, in Bernal v. Paradigm Talent & Literary Agency, the court held that the plaintiff had not "presented more than a scintilla of evidence to support her theory that [d]efendants had a reasonable possibility of access" to the allegedly infringed work. 788 F. Supp. 2d 1043, 1058 (C.D. Cal. 2010). In that case, the plaintiff submitted the allegedly infringed work, Homeless, to a talent agent, Ruf, at the same talent agency, Paradigm, as that which represented the creator of the allegedly infringing work, Desperate Housewives. Id. at 1049. Another agent at Paradigm, Patman, represented the creator of Desperate Housewives, Cherry. Id. Plaintiff theorized, then, that Ruf could have given Homeless to Patman, who assisted Cherry in the development of Desperate

12

Housewives.  Id. at 1054.  It was undisputed that Ruf
and Patman had worked in the same agency, office, and
floor as each other, and that they had never worked on
any projects together.  Id. at 1058.  Both Ruf and
Patman testified that they had not passed along any
screenplay written by anyone else to another writer
represented by Paradigm.  Id.  The court found that
"the only reasonable inference from the record is that
Ruf and Patman are the type of distant colleagues who
occasionally engaged in idle chit-chat while riding the
elevator together or attending an office holiday party.
In short, they simply worked for the same company."
Id.  This, the court found, was not enough to raise a
triable issue of fact regarding access.  Id.

     Similarly, in Jones v. Blige, the Sixth Circuit
affirmed a grant of summary judgment, finding that
plaintiffs had not presented any evidence supporting
their theory of the defendant-creators' access to the
allegedly infringed work.  558 F.3d 485, 493 (6th Cir.
2009).  In that case, plaintiffs delivered a demo CD
containing the allegedly infringed work, "Party Ain't
Crunk," to McKaie, a Senior Vice President of Artists &
Repertoire ("A&R") at a division of Universal Music
Group Recordings, Inc.  Id. at 488-89.  This was done
after McKaie told one of the plaintiffs to send the
demo CD in.  Id. at 488.  McKaie, through his secretary
JoAnn Frederick, ultimately returned the demo CD to
plaintiffs.  Id. at 489.  Plaintiffs claimed that a

13

1   song by defendant Blige, "Family Affair," released

2   several months after plaintiffs had submitted "Party

3   Ain't Crunk" to McKaie, infringed on "Party Ain't

4   Crunk." Id. at 488-89.  The court found that the

5   plaintiffs' various asserted connections between McKaie

6   and the defendants was unsupported by the record.  Id.

7   at 491.  In particular, plaintiffs, without support,

8   asserted that McKaie acted as a liaison between

9   departments, that he was in a position to provide

10  suggestions or comments to the creators of "Family

11  Affair," and that McKaie knew of Blige's album because

12  one of the other songs on Blige's album had a sample of

13  a television theme-song.  Id. at 491-92.  The court

14  rejected such theories, finding no evidence supporting

15  plaintiffs' theories.  Id. at 492.  Instead, the sole

16  connection between McKaie and Blige was that Blige had

17  a recording contract with Universal.  Id. at 491.  As

18  such, the Sixth Circuit affirmed the district court's

19  holding that plaintiffs had not established access.

20  Id. at 493.

21      The Court finds that Plaintiff's theories of access

22  through the UMG employees here are equally, if not

23  more, attenuated and speculative as those in Bernal and

24  Jones.

25      Plaintiff's primary argument regarding "chain of

26  events" access is that the Domino Writers must have

27  received BRC because of the enormous amount of control

28  UMG exerts over its artists.  Opp'n 13:10-15.

Plaintiff presents several facts to show corporate control: (1) testimony that Defendant Cornish apparently did not know two of the four other writers on Domino (SDMF ¶ 14; Supp. Movit Decl. Ex. 15 [Cornish Depo. 18:9-13]); (2) testimony that while Defendant Cornish approves all remixes of her songs she did not recall a particular remix (Pease Decl. Ex. E [Cornish Depo. 34:16-20; 35:1-16]); and (3) testimony from Defendant Cornish that a song she co-wrote, "Party in the U.S.A.," was pitched by numerous persons to other recording artists and was ultimately recorded by Miley Cyrus (Pease Decl. Ex. E [Cornish Depo 60:11-61:5]). Yet beyond arguing that UMG exerts such control over its artists, Plaintiff does not argue how a UMG employee's receipt of BRC would put that intermediary "in a position to transmit" BRC to the Domino Writers. Gable, 727 F. Supp. 2d at 826.  In other words, Plaintiff fails to even attempt to trace Albert, Feldman, Baker, Lee, or Czarra's receipt of BRC to any of the Domino Writers in any meaningful way.

  Without a showing as to how the Domino Writers and these alleged intermediaries' paths crossed, the Court finds that Plaintiff has not presented any evidence showing that "the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier [] involve[s] some overlap in subject matter to permit an inference of access."  Meta-Film, 586 F. Supp. at 1358.

15

1    Plaintiff has not shown *any* overlap beyond the fact

2  that these individuals happened to be employed by

3  Defendant UMG at the same time Defendant Cornish

4  created Domino.  Plaintiff's theories of access are

5  essentially analogous to the plaintiff's theory in

6  Jones wherein the only link between intermediary and

7  alleged infringer was a thin, tenuous, corporate

8  connection.

9    Notwithstanding the failure of Plaintiff's

10 "corporate control" theory of access, the Court still

11 proceeds to analyze Plaintiff's purported UMG employee-

12 intermediaries.

13   Plaintiff first asserts that Nate Albert, a Senior

14 Vice President, A&R for Defendant URR, served as an

15 intermediary as he was in a position to supervise and

16 control Defendant Cornish so as to transmit BRC to the

17 Domino Writers.  Opp'n 13:1-8.  Plaintiff stresses the

18 importance of the A&R department at Defendant UMG.  As

19 far as this Court can determine, the A&R department's

20 functions are: (1) to discover and recruit new artists;

21 (2) to work with artists on their sound recordings; (3)

22 to deliver master recordings to the label for release;

23 and (4) to work with the label's sales, marketing, and

24 other departments to maximize artists' recording sales.

25 Mackay Decl. ¶ 3.  Plaintiff produces the declaration

26 of Brandon Mason to show that Albert listened to a

27 recording of BRC in Mason's presence on June 8, 2009

28 and was given a CD of BRC at the end of the meeting.

Mason Decl. ¶ 2.  Although Plaintiff has produced
evidence showing that Albert received a copy of BRC,
crucially, Plaintiff has *not* produced any logical chain
of events tying Albert to any of the Domino Writers.[1]
Even construing all inferences in favor of Plaintiff,
Plaintiff has failed to show a connection between
*Albert* and any of the Domino Writers or the Domino
project.  Even if Albert did have supervisory,
creative, or business control over Defendants UMG or
URR's artists as a Senior Vice President, A&R,
Plaintiff has *not* presented any evidence implying that
Albert had such control over any of the Domino Writers
or interaction with such individuals who did have such
control.

In fact, Albert has declared that he has never met
any of the Domino Writers, has never provided anything
to said writers, and has no role or responsibility -
supervisory, creative, business, or otherwise - over
Defendant Cornish's music.  Albert Decl. ¶¶ 3-6.
Albert has also declared that he has never played,
performed, or provided a copy of BRC to anyone in the
world.  Id. at ¶ 7.  Plaintiff fails to produce any

---

[1] Plaintiff cites to the Mason Declaration to
dispute Defendants' assertions that Albert has never
met or provided material to any of the Domino Writers.
The Mason Declaration merely states that Mason provided
Albert with a copy of BRC.  It does nothing to show how
Albert could have gone on to provide BRC to any of the
Domino Writers.

evidence to the contrary.  In light of Albert's denials, the Court finds that Plaintiff has failed to show access through Albert.  See Tomasini v. Walt Disney Co., 84 F. Supp. 2d 516, 520 (S.D.N.Y. 2000) (finding that testimony by intermediary disclaiming any distribution of the allegedly infringed property to any at any time weighed against a finding of access).  In any event, the Court further finds that Plaintiff has not presented any evidence showing any dealings between Albert and the Domino Writers, much less any overlap in subject matter.  Accordingly, the Court finds that Plaintiff has failed to show a chain of events evidencing access through Albert.

Plaintiff cites to the same evidence to create an issue of material fact as to the Domino Writers' access through Sylvia Baker, Josh Feldman, and Sunny Elle Lee. SDMF ¶¶ 39, 61, 72, 81, 84.  In particular, Plaintiff cites to: (1) an email chain between Lee and Kristin Loomis in which Kristin Loomis purportedly sent Lee an mp3 copy of BRC (Loomis Decl. Ex. C [Will Loomis Depo. Ex. 18]); (2) deposition testimony of Plaintiff speculating that Lee may have shown BRC to Sylvia Rhone, who may have been Lee's boss at the time (Pease Decl. Ex. G [Will Loomis Depo. Vol. 3 385:12-24]); and (3) deposition testimony of Plaintiff that the last time he spoke with Josh Feldman was March 4, 2009 wherein Feldman indicated he would check back in with Plaintiff in a year but that Lee was the one who

checked up with Plaintiff (Pease Decl. Ex. G [Will
Loomis Depo. Vol. 3 456:6-10]).  As a threshold matter,
it is not apparent how any of these facts connects any
of these three purported conduits to any of the Domino
Writers beyond suggesting that Lee and Feldman may have
obtained copies of BRC.

Plaintiff asserts that Sylvia Baker, a specialist
in the Shared Services Department of the Copyright and
Royalties Division of Defendant UMG, could serve as an
intermediary.  SDMF ¶ 59; Baker Decl. ¶ 1.  It is not
entirely clear on the record how Baker received a copy
of BRC.  Plaintiff does not argue any theory on how
Baker could have served as an access point for any of
the Domino Writers.  Moreover, Plaintiff has not
presented any evidence to rebut Baker's myriad
declarations denying any connection with Defendant
Cornish and the other Domino Writers.  Baker Decl. ¶¶
4-7; SDMF ¶¶ 62, 64-67.  It appears that Plaintiff's
sole theory regarding the Domino Writers' access to BRC
through Baker lies in the same vein as his theory of
access through Albert.  Yet, Plaintiff does not dispute
that Baker's job responsibilities involve processing
mechanical licenses for various writers, not finding
new artists, selecting creative material for roster
artists, or deciding which recordings will be released
by UMG.  SDMF ¶ 63.  In short, Plaintiff has not
presented any evidence connecting Baker with the Domino
Writers, other than the mere fact that she works for

1  Defendant UMG.  The Court hereby finds that this is not
2  enough to create a triable issue of material fact as to
3  access through Baker.

4      Plaintiff also asserts a theory that Josh Feldman,
5  a former UMG employee, could have provided the Domino
6  Writers with access to BRC.  SDMF ¶ 68.  Plaintiff
7  testified in his deposition that Feldman "is a
8  Universal A&R rep that came to see" Plaintiff's band's
9  show in March 2009.  Movit Decl. Ex. 10 [Will Loomis
10 Depo. Vol. 3, 454:21-23].  But beyond this, it is not
11 clear how Feldman could have crossed paths with any of
12 the Domino Writers.  It is undisputed that while
13 Feldman worked for UMG, he was assigned to Cherry
14 Entertainment, an entity signed to a separate label
15 deal with UMG.  SDMF ¶ 73.  While there, Feldman
16 reported directly to Jolene Cherry in Santa Monica,
17 California.  SDMF ¶ 74.  Plaintiff concedes that the
18 Domino Writers have never met or received anything from
19 Feldman, and that Feldman had no role or responsibility
20 with regard to Defendant Cornish's music or recordings.
21 SDMF ¶¶ 70-71.  Beyond merely theorizing that Feldman's
22 receipt of BRC must be imputed to the Domino Writers,
23 Plaintiff provides no evidence actually substantiating
24 any connection between Feldman and the Domino Writers.
25 As such, the Court finds that there Plaintiff has not
26 presented any evidence creating a triable issue of
27 material fact as to the Domino Writers' access to BRC
28 through Feldman.

1    Plaintiff's also identifies Sunny Elle Lee as a

2  possible intermediary.[2]  SDMF ¶ 79.  Plaintiff does

3  present evidence showing that Lee received a copy of

4  BRC from Kristin Loomis - an email chain between Lee

5  and Kristin Loomis wherein Lee requests an mp3 of BRC.

6  Loomis Decl. Ex. C [Will Loomis Depo. Ex. 18].

7  Plaintiff surmises that Lee could have provided a copy

8  of BRC to Sylvia Rhone, who was apparently Lee's boss

9  at Universal Motown.[3]  Pease Decl. Ex. G [Will Loomis

10 Depo. Vol. 3 385:12-24].  Yet Plaintiff provides no

11 explanation of Lee's dealings - or Rhone's dealings -

12 with the Domino Writers or the Domino project

13 sufficient "to permit an inference of access."  <u>Meta-</u>

14 <u>Film</u>, 586 F. Supp. at 1358.  Even accepting Plaintiff's

15 contention that A&R representatives play significant

16 roles in the selection of music for artists on

17 Defendants UMG and URR's rosters, Plaintiff has failed

18 to assert how, when, or in what way Lee could have

19 crossed paths with any of the Domino Writers or even

20 anyone who interacted with the Domino Writers or the

21 Domino project.  If the court in <u>Bernal</u> held that the

22 plaintiff failed to show access even when that

23 _____

24    [2] While Plaintiff suggested that Lee was an
   executive at Defendant UMG in oral argument, he has not
25 presented any evidence showing that she was a UMG or
   URR executive at any time.
26

27    [3] There is no evidence in the record detailing
28 whether Universal Motown is a separate entity from
   Defendants UMG and URR.

plaintiff had shown that the intermediary worked in the same office, on the same floor as an individual who creatively influenced the allegedly infringing work, this Court, *a fortiori*, cannot find a triable issue of access where Plaintiff has failed to identify even one person connected to both Lee and to any of the Domino Writers and the Domino project.  In short, the Court finds that Plaintiff has failed to produce sufficient evidence to create a triable issue of access through Lee.

Plaintiff also appears to identify Mark Czarra as a possible intermediary.  While Plaintiff includes Czarra's declaration in his Opposition, he does not provide any argument in support of his theory of access through Czarra.[4]  Plaintiff presents evidence that Czarra worked as a Vice President of Promotion at Defendant UMG from February 2005 to June 2009.  Czarra Decl. ¶ 5.  Plaintiff also presents evidence that Czarra worked with Plaintiff's band to get them more radio airplay in "the summer of 2009" and in 2010.  Id. at ¶¶ 3-4.  In other words, construing all inferences in Plaintiff's favor, Plaintiff has presented evidence that Czarra was in possession of BRC while he was working at Defendant UMG.  But Plaintiff's theory of

---

[4] At this juncture, because the Court finds that Plaintiff has failed to show access through Czarra, the Court need not decide whether the Czarra Declaration is precluded for Plaintiff's failure to identify Czarra as a potential witness in discovery.

access through Czarra suffers from the same defects as his theories of access through Albert, Baker, Feldman, and Lee: Plaintiff has failed to identify how Czarra is connected to any of the Domino Writers or to any individual connected to both Czarra and any of the Domino Writers or the Domino project. Plaintiff must show some "overlap in subject matter" between Czarra and the Domino Writers for there to be an inference of access. Gable, 727 F. Supp. 2d at 826. Plaintiff has failed to do so here. Thus, the Court finds that Plaintiff has failed to provide sufficient evidence of access through Czarra.

      b.  *Non-UMG Employees*

Plaintiff provides two more "chain of events" theories of access: (1) through Casey Hooper and (2) through Rodney Jerkins. SDMF ¶¶ 85, 105.

Plaintiff argues that Casey Hooper, Plaintiff's former guitar player, could serve as an intermediary for Sandberg and Gottwald's access to BRC. Pease Decl. Ex. G [Will Loomis Depo. Vol. 3, 376:18-24. In particular, Plaintiff testified that Hooper was a writer on the Katy Perry movie "Part of Me." Id. Furthermore, Plaintiff asserts that Sandberg and Gottwald were coproducers of "Part of Me." Id. Plaintiff does not present any other evidence of any interactions between Gottwald or Sandberg and Hooper. But more to the point, Plaintiff has not produced any evidence as to the respective roles and

responsibilities of Hooper, Sandberg, and Gottwald with
respect "Part of Me."   Plaintiff has not presented any
evidence showing how or in what manner Hooper's role
overlapped with Sandberg and Gottwald's roles.   The
Court finds that this is insufficient to raise a
triable issue of material fact regarding access.

Finally, Plaintiff argues that Rodney Jerkins could
have provided access to BRC to the Domino Writers.
SDMF ¶ 105.   Plaintiff testified that he provided
Jerkins a copy of BRC through the New Music Seminar on
February 2, 2010.   Pease Decl. Ex. F [Will Loomis Depo.
Vol. 2 327:23-328:23].   Plaintiff also testifies that
Jerkins frequently works with three of the Domino
Writers: Kelly, Gottwald, and Sandberg.   Pease Decl.
Ex. F. [Will Loomis Depo. 328:10-12].   Plaintiff's
assertion is based upon information he purported to
have seen on the Internet.   Supp. Movit Decl. Ex. 13
[Will Loomis Depo. Vol. 3, 500:10-24; 502:10-23].
Plaintiff provides no other evidence tying Jerkins to
any of the Domino Writers.   It is well established that
"conclusory or speculative testimony is insufficient to
raise a genuine issue of material fact to defeat
summary judgment."   Anheuser-Busch, Inc. v. Natural
Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995).
Moreover, it is also well established that a district
court need not find a genuine issue of fact if it is
based on "'uncorroborated and self-serving' testimony."
F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir.

2010); *see* *also* <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)). Such is the case here.  Plaintiff provides no evidence, beyond Plaintiff's bald assertions, made without personal knowledge, that Jerkins actually worked with any of the Domino Writers.  Accordingly, the Court finds that Plaintiff has failed to show access through Ronald Jerkins.

     c.  *Conclusion*

The Court finds that Plaintiff has failed to provide any evidence to support any of its purported "chain of events" theories of access.

    2.  <u>Widespread Dissemination</u>

"Where there is no direct evidence of access" and Plaintiff cannot show access through "a chain of events linking plaintiff's work and the defendant's access," plaintiff may still show access by "showing that the plaintiff's work has been widely disseminated." <u>Art Attacks Ink</u>, 581 F.3d at 1143.  It appears, however, that "the public dissemination necessary to infer that a defendant might have had access to the work is considerable." <u>McRae v. Smith</u>, 968 F. Supp. 559, 564 (D. Colo. 1997) (citing <u>Selle v. Gibb</u>, 741 F.2d 896, 901 (7th Cir. 1984)).  As a general matter, it appears that in order for a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available in the relevant market.  <u>See</u> <u>Art</u>

<u>Attacks Ink</u>, 581 F.3d at 1144 (finding T-shirt design was not widely disseminated where plaintiff sold 2,000 shirts a year, displayed the design at fair booths and store kiosks, and posted the designs on the Internet); <u>Rice</u>, 330 F.3d at 1178 (finding insufficient evidence of widespread dissemination where plaintiff sold 17,000 copies of a video over a 13 year period); <u>ABKCO Music, Inc. v. Harrisongs Music, Ltd.</u>, 722 F.2d 988 (2d Cir. 1983) (access found where song was number one on the popular music charts for weeks in the United States and England); <u>Jane Russell Designs, Inc. v. Mendelson & Assocs., Inc.</u>, 114 F. Supp. 2d 856, 864 (D. Minn. 2000) (finding access where product was nationally sold, generated substantial revenue, and was nationally advertised to the public); <u>Jane v. Fonda</u>, 526 F. Supp. 774, 776 (C.D. Cal. 1981) (book sales of no more than 2,000 copies nationwide and no more than 700 copies in Southern California did not create more than a bare possibility of access).

The Court finds that Plaintiff's evidence falls far short of this standard.

Plaintiff here has provided evidence of 46 total sales of BRC.  Pease Decl. Ex. B [Kristin Loomis Depo. Ex. 41].

Additionally, Plaintiff has provided a voluminous amount of "Jerome Promostions [sic] Playlists," "Spins Tracking Systems STSs," "radio reports," and "video airplay reports" to this Court without any explanation

or context.  Pease Decl. Ex. B. [Kristin Loomis Depo. Exs. 14-25, 27-32].  To the extent these are offered to prove the truth of the statements set forth in them – namely that BRC was actually played on these radio stations or television stations – they are hearsay as they are out of court statements offered to prove their truth.  Fed. R. Evid. 801(c).  These reports are inadmissible hearsay unless they qualify as either non-hearsay or fall within a hearsay exception.  Fed. R. Evid. 802.  Inadmissible hearsay, of course, cannot be considered on a motion for summary judgment.  Anheuser-Busch, 69 F.3d at 345 n.4.  Here, these reports do not qualify for any exception to the rule against hearsay. Despite Plaintiff's attempts to show otherwise (See Loomis Decl. ¶ 7), these reports do not qualify under the business records exception under Federal Rule of Evidence 803(6).  Under that exception, "[a] record of an act, condition, opinion, or diagnosis" may be excepted from the rule against hearsay if: (1) "the record was made at or near the time by-or from information transmitted by–someone with knowledge;" (2) the record was kept in the course of a regularly conducted activity; (3) making the record was a regular practice of that activity; (4) these conditions are shown by "the testimony of the custodian or another qualified witness;" and (5) "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness."  Fed.

R. Evid. 803(6); <u>Paddack v. Dave Christensen, Inc.</u>, 745 F.2d 1254, 1258 (9th Cir. 1984).  In particular, to meet the knowledge requirement, the source of the information in the record must be identified.  <u>Scheerer v. Hardee's Food Sys.</u>, 92 F.3d 702, 706 (8th Cir. 1996) (holding that an "incident report was not admissible as a business record under Fed. R. Evid. 803(6) because the source of the information contained therein was never identified at trial").  It is not apparent to the Court who created these reports, how they were created, or from what information or methodology these reports were compiled.  Accordingly, the Court finds the reports constitute inadmissible hearsay.

Plaintiff further produces evidence that Plaintiff and Kristin Loomis heard BRC over the radio in Santa Barbara between four to six times.  SDMF ¶¶ 35-38. Plaintiff also presents evidence that he viewed a television broadcast of BRC on MTVu, a station shown on college campuses.  SDMF ¶ 29.  Such evidence is insufficient to raise a triable issue of material fact as to widespread dissemination - "evidence of 'small circulation . . . or local air time' without other proof of access is generally not enough to demonstrate a reasonable possibility of access."  <u>Feldman v. Twentieth Century Fox Film Corp.</u>, 723 F. Supp. 2d 357, 365 (D. Mass. 2010) (citing 4 Nimmer on Copyright § 13.02[A]).

Plaintiff similarly seeks to show widespread

dissemination by arguing that various retailers and airlines played BRC.  Opp'n 14:24-27; SDMF ¶¶ 31, 33. The evidence Plaintiff produces to support these theories amounts to: (1) a Loomis & the Lust "e-blast" where the author states that BRC "is being featured on the Urban Outfitters sampler;" (2) an email chain between Kristin Loomis and two other individuals discussing spending an additional $2,000 to be included in an Urban Outfitters sampler; (3) an email from DMX, Inc. to Loomis & the Lust stating that DMX's client, Abercrombie & Fitch, "wishes to play your release *Bright Red Colors [sic] by Loomis and the Lust* within their shops and worldwide (1,200 locations);" (4) an email from Loomis & the Lust to "HIP Video Promo" detailing Loomis & the Lust's apparent media exposure; and (5) Andy Gesner's declaration that the music video for BRC was played in retailers including Harley Davidson, Footlocker, Champs, and Foot Reaction.  Pease Decl. Ex. B. [Kristin Loomis Decl. Exs. 34-35, 37-38]; Gesner Decl. ¶ 10.  As a preliminary matter, the emails Plaintiff cites to regarding the Urban Outfitters and Continental and Delta Airlines promotions are out-of-court statements and thus hearsay to the extent they are offered for their truth.  As a result, this Court need not consider them in determining whether Plaintiff has presented a triable issue of material fact.  See Anheuser-Busch, 69 F.3d at 345 n.4.  But even assuming, *arguendo*, that this evidence were admissible, Plaintiff

has not shown whether any of these retailers actually went forward with these promotions, how many stores these retailers played BRC in, or how many samplers containing BRC were given away.  Moreover, Plaintiff must not only show that BRC was actually played in these retail outlets, but also that "significant numbers of passerby would notice" BRC.  Art Attacks Ink, 581 F.3d at 1144.  The Court therefore finds that such evidence is insufficient to show widespread dissemination.

Plaintiff raises two other potential theories of widespread dissemination.  First, Plaintiff appears to contend that BRC achieved widespread dissemination through his live performances.  Opp'n 11:8.  However, Plaintiff has not produced any evidence, such as the scope, extent, attendance levels, locations, or number of performances of BRC, regarding his live performances.  In any event, Plaintiff does not dispute that he has no reason to believe that any of the Domino Writers ever attended any performance of BRC.  SDMF ¶ 46.  Thus, Plaintiff has failed to present a triable issue of material fact as to widespread dissemination through live performances.  See McRae, 968 F. Supp. at 565 (where defendant composers did not attend live performances of the allegedly infringed song, there was no evidence of national airplay, and no evidence of nationwide dissemination, court held availability of the song was even less than virtually de minimis).

Second, Plaintiff appears to contend that BRC achieved widespread dissemination through its availability on the Internet.  Opp'n 11:7.  The availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through widespread dissemination.  See Art Attacks Ink, 581 F.3d at 1145.  As such, the Court finds that these arguments fail to show a triable issue of material fact regarding widespread dissemination.

   3.   Striking Similarity

     One alternative to establishing access through a chain of events or widespread dissemination is showing a "striking similarity" between the works at issue. See Smith, 84 F.3d at 1220; Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 356 (4th Cir. 2001); Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1170 (7th Cir. 1997) ("a similarity that is so close as to be highly unlikely to have been an accident of independent creation is evidence of access"); Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir. 1987).

   The Court need not address this issue because Plaintiff presents no argument on the issue of striking similarity.  Moreover, as "striking similarity" exists only when "two songs are so much alike that the only reasonable explanation for such a great degree of similarity is that the later song was copied from the first," it is unlikely Plaintiff could even show striking similarity.  Gaste v. Kaiserman, 863 F.2d

31

1061, 1067 n.3 (2d Cir. 1988); Stewart v. Wachowski, 574 F. Supp. 2d 1074, 1101, 1103 (C.D. Cal. 2005). Striking similarity simply means that "in human experience, it is virtually impossible that the two works could have been independently created." Stewart, 574 F. Supp. 2d at 1103 (quoting 4 Nimmer on Copyright, § 13.02[B]).

Plaintiff's expert, Dr. David Stern, does not address the issue of striking similarity. See Pease Decl. Ex. C [Stern Expert Report]. Instead, after analyzing the similarities between BRC and Domino, Dr. Stern determines only that "it is reasonable to conclude on purely musical grounds that the verse melody of 'Domino' is largely based on the verse melody of 'Bright Red Chords.'" Pease Decl. Ex. C. [Stern Expert Report Ex. C p. 5]). Moreover, Dr. Stern's analysis centers on the verse melodies of BRC and Domino, and specifically notes that Domino "contains divergent melodic material" from BRC. Pease Decl. Ex. C. [Stern Expert Report Ex. C. p. 5]. Dr. Stern's opinion is a far cry from concluding that it is "virtually impossible" that BRC and Domino could have been independently created. Stewart, 574 F. Supp. 2d at 1103.

Accordingly, the Court finds that Plaintiff has not presented any evidence on the issue of striking similarity.

//

4.   <u>Conclusion</u>

Because Plaintiff has failed to present any evidence supporting a plausible theory of access through a "chain of events," a "widespread dissemination" of BRC, or by striking similarity, the Court holds that Plaintiff has failed to present a genuine issue of material fact regarding the Domino Writers' access to BRC.  As such, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**B.   <u>Substantial Similarity</u>**

Because Plaintiff has failed to present any admissible evidence establishing that any of the Domino Writers had access to BRC prior to creating Domino, the Court need not determine whether BRC and Domino are substantially similar.  <u>See</u> <u>Art Attacks Ink</u>, 581 F.3d at 1145 (affirming grant of summary judgment on copyright infringement claim solely on the basis of insufficient proof of access).

**C.   <u>Miscellaneous Issues</u>**

Defendants include with their Motion several Requests for Judicial Notice [32-16, 80-5] and numerous Evidentiary Objections [80-2].

1.   <u>Requests for Judicial Notice</u>

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." (<u>Lee v. City of L.A.</u>, 250 F.3d 668, 689 (9th Cir. 2001)), and a court must take judicial notice of facts "if requested by a party and supplied with the

necessary information." Fed. R. Evid. 201(d). A fact
is appropriate for judicial notice only if it is not
subject to reasonable dispute in that it is (1)
generally known within the territorial jurisdiction of
the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy
cannot reasonably be questioned. Fed. R. Evid. 201(b).

    Defendants request this Court take judicial notice
of three orders in other cases in this judicial
district. While this Court did not rely on any of
these orders in reaching its conclusions, the Court
nevertheless **GRANTS** Defendants' request for judicial
notice as these orders are not subject to reasonable
dispute and are capable of accurate and ready
determination by resort to sources whose accuracy
cannot reasonably be questioned.

//
//

1

2        2.   Evidentiary Objections

3        Beyond the evidentiary objections already ruled

4   upon as a basis for reaching the Court's conclusions,

5   the Court need not rule on any other evidentiary

6   objections.   Accordingly, the Court deems as **MOOT**

7   Defendants' remaining evidentiary objections.

8                     **IV.   CONCLUSION**

9        For the above stated reasons, the Court **GRANTS**

10  Defendants' Motion for Summary Judgment.

11

12  **IT IS SO ORDERED.**

13  DATED: November 13, 2013

14

15                     RONALD S.W. LEW

16                     _____
                       **HONORABLE RONALD S.W. LEW**
                       Senior, U.S. District Court Judge

17

18

19

20

21

22

23

24

25

26

27

28