UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILL LOOMIS,<br><br>              Plaintiff,<br><br>   v.<br><br>JESSICA CORNISH P/K/A JESSIE J; UMG RECORDINGS, INC.; and UNIVERSAL REPUBLIC RECORDINGS,<br><br>              Defendants. | CV 12-5525 RSWL (JEMx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW Re: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** [30] |

After consideration of all the papers submitted pursuant to Defendants Jessica Cornish p/k/a Jessie J, UMG Recordings, Inc., and Universal Republic Records' (collectively "Defendants") Motion for Summary Judgment [30], the Court makes the following findings of fact and conclusions of law.

1

1 **UNCONTROVERTED FACTS**

1. Plaintiff Will Loomis ("Plaintiff") is a self-employed musician who has, since 2007, been in a rock band called "Loomis & the Lust." Def.'s Statement of Uncontroverted Facts and Conclusions of Law in Support of Def.'s Motion for Summary Judgment ("SUF") ¶¶ 1-2.

2. In June or July of 2008, Plaintiff wrote a composition entitled Bright Red Chords ("BRC"). SUF ¶ 3.

3. Plaintiff obtained a copyright registration for BRC by depositing a CD containing a recording of that composition (the "Deposit Copy Recording"), as well as several other recordings, with the U.S. Copyright Office. Id. at ¶ 4.

4. The U.S. Copyright Office gave the CD containing the Deposit Copy Recording the registration number PAU 003479101, which is the only registered copyright alleged to have been infringed in the Complaint. Id. at ¶¶ 5-6.

5. The Deposit Copy Recording, recorded on August 4, 2008, was never commercially released or exploited. Id. at ¶¶ 7, 12.

6. Plaintiff released CDs entitled "Nagasha" and "Space Camp," which contained a recording of BRC. Id. at ¶ 8.

7. "Nagasha" was released in or about July 2009 and "Space Camp" was released in or about 2010. Id. at ¶¶ 9-10.

8. Plaintiff does not know how many copies of "Nagasha" or "Space Camp" have been sold. Id. at ¶¶ 24-25.

9. Defendant Cornish is a recording artist who is signed to Defendant URR. Compl. ¶¶ 14, 17.

10. Defendant URR is owned by Defendant UMG. Id. at ¶ 18.

11. In June 2011, Defendant Cornish, Lukasz Gottwald p/k/a "Dr. Luke," Claude Kelly, Karl Martin Sandberg p/k/a "Max Martin," and Henry Walter p/k/a "Cirkut" (collectively the "Domino Writers") wrote a composition entitled "Domino." SUF ¶ 14.

12. In or about June 2011, Gottwald and Walter created an instrumental musical track which became the musical bed for Domino. Id. at ¶¶ 16-17.

13. In June 2011, the melody and lyrics were written and recorded at Conway Studios. Id. at ¶ 18.

14. Kelly and Cornish created the melody and lyrics for the verses and choruses of Domino in collaboration with Gottwald over the instrumental musical bed. Id. at 19.

15. Walter was present during this session. Id. at ¶ 20.

16. Gottwald and Sandberg provided additional creative contributions during the session. Id. at ¶ 21.

17. At this session, Defendant Cornish recorded her vocal performance of the melody and lyrics that had

3

1 been created at the session. Id. at ¶ 22.

2     18. After that session at Conway Studios, Gottwald worked with Walter and Sandberg to fine-tune and polish Domino. Id. at ¶ 23.

    19. Domino was released by Defendant URR. Id. at ¶ 13.

    20. Plaintiff has never met or spoken to any of the Domino Writers. Id. at ¶ 43.

    21. Plaintiff has never instructed anyone to send any music to any of the Domino Writers. Id. at ¶ 45.

    22. Plaintiff alleges that in August 2011, Defendants infringed upon his copyright by producing and distributing Domino. Compl. ¶ 19.

    23. Defendant URR's Artists & Repertoire ("A&R") department's functions are: (1) to discover and recruit new artists; (2) work with artists on their sound recordings; (3) deliver master recordings to the label for release; and (4) work with the label's sales, marketing, and other departments to maximize artists' recording sales. Mackay Decl. ¶ 3.

    24. Nate Albert is a Senior Vice President, A&R at Defendant URR. Pl.'s Statement of Disputes of Material Facts and Conclusions of Law ("SDMF") ¶ 178; Albert Decl. ¶ 1.

    25. Albert listened to a recording of BRC in Brandon Mason's presence and was given a copy of BRC by Mason. SDMF ¶¶ 179-180; Mason Decl. ¶ 2.

    26. Albert has no involvement with and no personal

4

knowledge regarding the creation of Domino. SUF ¶ 52.

27. Albert has no role or responsibility - supervisory, creative, business, or otherwise - with respect to any of Defendant Cornish's music and recordings, including Domino. SUF ¶ 57.

28. Albert has never played, performed, or provided a copy of BRC to anyone in the world. Id. at ¶ 58.

29. Plaintiff has not shown that a genuine issue exists as to the Domino Writers' access through Albert.

30. Sylvia Baker is a specialist in the Shared Services Department of the Copyright and Royalties Division of Defendant UMG. Baker Decl. ¶ 1.

31. Baker does not know, and has never met, any of the Domino Writers. SUF ¶ 62.

32. Baker's job responsibilities involve processing mechanical licenses for various writers; she has no responsibility for finding new artists, selecting creative material for roster artists, or deciding which recordings will be released by UMG. Id. at ¶ 63.

33. Baker has never had any role or responsibility - supervisory, creative, business, or otherwise - with respect to Defendant Cornish's music and recordings, including Domino. Id. at ¶ 64.

34. Baker has never been part of any work unit that wrote or created Domino or any other music for Defendant Cornish. Id. at ¶ 65.

35. Baker has never provided anything to, or played or performed any music for, any of the Domino Writers.

Id. at ¶ 66.

36. Baker has never played, performed, or provided a copy of BRC to anyone in the world. Id. at ¶ 67.

37. Plaintiff has not shown that a genuine issue exists as to the Domino Writers' access through Baker.

38. Josh Feldman is a former A&R representative for Defendant UMG. Mackay Decl. ¶ 8.

39. The Domino Writers do not know, have never met, and have never received anything from Feldman. SUF ¶ 70.

40. Feldman had no role or responsibility - supervisory, creative, business or otherwise - with regard to any of Defendant Cornish's music and recordings. Id. at 71.

41. While Feldman worked for Defendant UMG, he was assigned to Cherry Entertainment, an entity signed to a separate deal with Defendant UMG. Id. at ¶ 73.

42. While there, Feldman reported directly to Jolene Cherry in Santa Monica, California, not Defendant URR's offices in New York. Id. at ¶ 74; Mackay Decl. ¶ 8.

43. Plaintiff has not shown that a genuine issue exists as to the Domino Writers' access through Feldman.

44. Sunny Elle Lee is a former employee of Defendant URR's A&R department. Id. at ¶ 79; Mackay Decl. ¶ 6.

45. Lee was not part of the work unit that created

1  Domino.  <u>Id.</u> at ¶ 82.
2       46. The Domino Writers have never met, and have
3  never received anything from, Lee.  <u>Id.</u> at ¶ 81.
4       47. Lee had no role or responsibility -
5  supervisory, creative, business or otherwise - with
6  regard to any of Defendant Cornish's music and
7  recordings, including Domino.  <u>Id.</u> at ¶ 83.
8       48. Plaintiff has not shown that a genuine issue
9  exists as to the Domino Writers' access through Lee.
10      49. Mark Czarra worked as a Vice President of
11 Promotions at Defendant UMG from February 2005 to June
12 2009.  SDMF ¶ 181.  Czarra's job responsibilities
13 included promotion of Universal Motown artists' sound
14 recordings to alternative radio stations, and
15 development and implementation of radio promotional
16 strategies.  Carbonell Supp. Decl. ¶ 3.
17      50. Czarra worked with Loomis & the Lust to help
18 get them more radio airplay for "Nagasha" in the summer
19 of 2009 and to promote BRC on the radio in 2010.  SDMF
20 ¶ 182-183.
21      51. Plaintiff has not shown that a genuine issue
22 exists as to the Domino Writers' access through Czarra.
23      52. Casey Hooper was Plaintiff's former guitar
24 player.  SDMF ¶ 86.
25      53. Plaintiff has not shown that a genuine issue
26 exists as to the Domino Writers' access through Hooper.
27      54. Plaintiff has asserted a theory that an
28 individual named Rodney Jerkins purportedly could have

7

provided the Domino Writers with access to BRC based upon his claim that Jerkins judged a 2010 talent competition at which a video of BRC was played. SUF ¶ 104.

55. Plaintiff has not shown that a genuine issue exists as to the Domino Writers' access through Jerkins.

56. Plaintiff has not shown that a genuine issue exists as to whether BRC was widely disseminated.

57. Plaintiff has not shown that a genuine issue exists as to striking similarity between BRC and Domino.

**CONCLUSIONS OF LAW**

1. To establish copyright infringement, two elements must be proven: 1) ownership of a valid copyright; and 2) copying of protected elements of the plaintiff's work. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir. 2010).

2. "A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (citing 17 U.S.C. § 410(c)). See also Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

3. The Court finds that Plaintiff owns a valid

copyright in a CD containing a recording of BRC, registration number PAU 003479101. SUF ¶¶ 4-6.

4. "Absent evidence of direct copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1076 (9th Cir. 2006).

5. A plaintiff satisfies the access element by showing that a defendant had "an opportunity to view or to copy plaintiff's work." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000) (citing Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1172 (9th Cir. 1977)). The burden is on Plaintiff to "show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." Art Attacks Ink, 581 F.3d at 1143 (citing Three Boys Music Corp., 212 F.3d at 481). Moreover, "Plaintiff cannot create a triable issue of access merely by showing 'bare corporate receipt' of his work by an individual who shares a common employer with the alleged copier." Gable v. NBC, 727 F. Supp. 2d 815, 826 (C.D. Cal. 2010) (citing Jorgensen v. Epic/Sony Records, 351 F.3d 46, 52-53 (2d Cir. 2003); Meta-Film Assocs., Inc. v. MCA, Inc., 586 F. Supp. 1346, 1357-58 (C.D. Cal. 1984)).

6. Generally speaking, "[w]here there is no direct

evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009); see also Three Boys Music Corp., 212 F.3d at 482.

    7. For chain of events, the critical question is whether Plaintiff submitted the work "*to an intermediary who is in a position to transmit [Plaintiff's] work to the creators of the infringing work*." Gable, 727 F. Supp. 2d at 826 (citing Meta-Film, 586 F. Supp. at 1355-56). Such an intermediary "can be a person who (1) has supervisory responsibility for the *allegedly infringing project*, (2) contributed ideas and materials to it, or (3) *worked in the same unit* as the creators." Id. (emphasis added). "At a minimum, however, 'the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access.'" Id. (quoting Meta-Film, 586 F. Supp. at 1358).

    8. Plaintiff has failed to present a genuine issue of material fact as to access through a chain of events.

    9. "Where there is no direct evidence of access" and Plaintiff cannot show access through "a chain of events linking plaintiff's work and the defendant's

1  access," plaintiff may still show access by "showing
2  that the plaintiff's work has been widely
3  disseminated." Art Attacks Ink, 581 F.3d at 1143. It
4  appears, however, that "the public dissemination
5  necessary to infer that a defendant might have had
6  access to the work is considerable." McRae v. Smith,
7  968 F. Supp. 559, 564 (D. Colo. 1997) (citing Selle v.
8  Gibb, 741 F.2d 896, 901 (7th Cir. 1984)).
9     10. As a general matter, in order for a work to be
10 widely disseminated, it must achieve a high degree of
11 commercial success or be readily available in the
12 relevant market. See Art Attacks Ink, 581 F.3d at 1144
13 (finding T-shirt design was not widely disseminated
14 where plaintiff sold 2,000 shirts a year, displayed the
15 design at fair booths and store kiosks, and posted the
16 designs on the Internet); Rice, 330 F.3d at 1178
17 (finding insufficient evidence of widespread
18 dissemination where plaintiff sold 17,000 copies of a
19 video over a 13 year period); ABKCO Music, Inc. v.
20 Harrisongs Music, Ltd., 722 F.2d 988 (2d Cir. 1983)
21 (access found where song was number one on the popular
22 music charts for weeks in the United States and
23 England); Jane Russell Designs, Inc. v. Mendelson &
24 Assocs., Inc., 114 F. Supp. 2d 856, 864 (D. Minn. 2000)
25 (finding access where product was nationally sold,
26 generated substantial revenue, and was nationally
27 advertised to the public); Jane v. Fonda, 526 F. Supp.
28 774, 776 (C.D. Cal. 1981) (book sales of no more than

2,000 copies nationwide and no more than 700 copies in Southern California did not create more than a bare possibility of access).

11. The Court finds that Plaintiff has failed to present any evidence creating a triable issue of material fact as to the issue of access through widespread dissemination of BRC.

12. One alternative to establishing access through a chain of events or widespread dissemination is showing a "striking similarity" between the works at issue. See Smith v. Jackson, 84 F.3d 1213, 1220 (9th Cir. 1996); Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 356 (4th Cir. 2001); Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1170 (7th Cir. 1997) ("a similarity that is so close as to be highly unlikely to have been an accident of independent creation is evidence of access"); Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir. 1987).

13. The Court finds that Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to striking similarity.

//
//
//

14. Because Plaintiff has failed to present any evidence supporting a plausible theory of access through a "chain of events," a "widespread dissemination" of BRC, or by striking similarity, the Court holds that Plaintiff has failed to present a genuine issue of material fact regarding the Domino Writers' access to BRC.

**IT IS SO ORDERED.**

DATED: November 13, 2013

                RONALD S.W. LEW
                _____
                **HONORABLE RONALD S.W. LEW**
                Senior, U.S. District Court Judge